A89A0243. TARGET PROPERTIES, INC. v. GILBERT.
(384 SE2d 188)

Benham, Judge.

Appellant Target Properties, Inc. (Target) entered into a contract to purchase property from appellee Warren Gilbert. Target paid $10,000 earnest money to the broker, Metro Brokers, Inc. (Metro). In a special stipulation to the contract, Gilbert granted Target "the right to terminate the contract for any reason whatsoever on or before 5:00 p.m. [on a certain day] by delivering written notice for such termination to [Gilbert]." Upon the timely exercise of the right of termination, $9,900 of Target's earnest money would be returned; if Target did not terminate and failed to consummate the sale, the earnest money was to go to Gilbert as full and liquidated damages.

On May 18, 1987, Target sent a written notice of termination by certified mail to Gilbert. Gilbert, claiming the notice was not timely, demanded the earnest money of Metro. Target, claiming it had properly avoided the contract, sought a refund of the earnest money from Metro. Metro's complaint for interpleader was granted by the trial court, the $10,000 was paid into the registry of the court, and Metro was discharged from all liability to Gilbert and Target Properties for the $10,000, and dismissed from the lawsuit. A bench trial between Target and Gilbert resulted in the entry of judgment for Gilbert, from which judgment Target now appeals.

At the center of the controversy is the date on which Target's right to terminate expired. Target's copy of the contract reflected a change of the critical date from April 20, 1987 to May 19, 1987, while Gilbert's copy showed a change from April 20, 1987 to May 17, 1987. The discrepancy is crucial since Target's notice of termination was sent by certified mail on May 18, 1987. The trial court, sitting as factfinder, found that the parties entered into a contract that provided for the right to terminate on or before 5:00 p.m., May 17, 1987. Concluding that the notice of termination was not timely delivered, the trial court found that Gilbert was contractually entitled to the earnest money as damages for the breach of the contract.

1. Contending that there was no "meeting of the minds," appellant takes issue with the trial court's conclusion that a valid contract existed.

" 'When a trial court sits as both judge and jury, the court's findings of fact are binding on appeal, and, unless wholly unsupported or clearly erroneous, will not afford a basis for reversal. [Cit.] On appeal this court must not substitute its judgment for that exercised by the trial court when there is some support for the trial court's conclusion. Our duty is not to weigh evidence de novo, but to merely determine if there is any evidence which supports the judgment below. [Cit.]' " *Gemini Constr. Co. v. Childs*, 182 Ga. App. 207, 208 (355 SE2d 81) (1987). On appeal, we must construe the evidence with every inference and presumption in favor of upholding the verdict. *Ackerman/Adair Realty Co. v. Coppedge*, 155 Ga. App. 903 (3) (273 SE2d 645) (1980).

Gilbert testified that the contract he received back from Target's agent had the special stipulation date changed to May 17 and the initials of Target's president acknowledging the change. While there was evidence that Target's president had initialed a date change to May 11 and that Gilbert had agreed to extend the right of termination a week beyond May 11, "an appellate court is without jurisdiction or authority to interfere with a verdict supported by some evidence, even where the verdict may be against the preponderance of the evidence. [Cit.]" *Barry v. J. C. Penney Co.*, 159 Ga. App. 587, 589 (284 SE2d 91) (1981).

2. Appellant next contends that the trial court erred in concluding that the notice mailed by Target on May 18 and received by Gilbert on May 20 was not delivered pursuant to the contract. The special stipulation to the contract granted Target "the right to terminate the contract for any reason whatsoever on or before 5:00 P.M. May 17, 1987, by delivering written notice for such termination to [Gilbert]." The contract to which the special stipulation was attached provided that "[a]ll notices hereunder shall be made in writing and shall be hand delivered or mailed, registered or certified U. S. Mail, . . . to the parties hereto at their respective addresses set forth below. . . . Any notice required or permitted to be given hereunder on or before a specified date shall be deemed to have been duly and timely given if hand delivered before 5:00 p.m. on such day or, when given by mail as aforesaid, if postmarked before midnight of such day." The address given for Gilbert was a Decatur post office box.

Target's president testified that May 17 fell on a Sunday in 1987; that he was unable to hand deliver notice of termination to Gilbert on that date because Gilbert had given only a post office box as an address; and that he did not know how to deliver notice to Gilbert on a Sunday. He decided to send the notice of termination via certified mail on Monday, May 18.

Relying on the provisions of its contract with Gilbert and the Supreme Court's decision in *Brooks v. Hicks*, 230 Ga. 500 (197 SE2d

711) (1973), Target maintains its notice was timely given. In *Brooks* at 502, the Supreme Court held that "if the time for exercise of rights or performance or tender of performance of an act under a contract falls on a holiday or Sunday, as a general rule it may be legally performed on the following day" when the act is one that cannot be performed on a Sunday. Since Target could not use either contractually acceptable method of giving notice on Sunday, May 17, under *Brooks*, Target could give timely notice on the next business day, Monday, May 18, using a method prescribed by the contract.

Since, under the terms of the contract and the holding in *Brooks*, Target had until May 18 to send notice via certified mail of its exercise of its right to terminate the contract, and Target did so in timely fashion, the trial court erred in concluding that notice of termination was not delivered pursuant to the contract.

Gilbert asserts that the timing of appellant's *sending* of notice is irrelevant because Target had, in effect, an option contract, the exercise of which is effective upon *receipt* of the notice. See *TST, Ltd. v. Houston*, 256 Ga. 679 (353 SE2d 26) (1987); *Anthony v. Ausburn*, 254 Ga. 472 (330 SE2d 724) (1985); *Musgrove v. Long*, 248 Ga. 902 (287 SE2d 23) (1982). Even if we equate Target's right to terminate the contract with the exercise of an option to purchase, we do not find the cited cases applicable. The contractual provisions in those cases provided only that notice be given by the grantee of the option. In the case at bar, the contract specified the means by which the notice was to be given. Since Gilbert had contractually agreed that Target could exercise its right to terminate by sending notice via certified mail and that the date sent would be the operative date, he will not now be heard to assert that the date of receipt is the critical date.

3. Gilbert's request for the assessment of damages against appellant pursuant to OCGA § 5-6-6 is denied.

*Judgment reversed. Deen, P. J., and Birdsong, J., concur.*

DECIDED MAY 22, 1989 —
REHEARING DENIED JULY 7, 1989 —

*William T. Cox, Jr.*, for appellant.
*Robert P. Wilson, W. John Wilson*, for appellee.